UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| MARK HALL, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| vs. ) | Case No. 4:15 CV 239 ACL |
| ) | |
| JAMES HURLEY, ) | |
| ) | |
| Respondent. ) | |

## **MEMORANDUM AND ORDER**

This matter is before the Court on the Petition of Mark Hall for a Writ of Habeas Corpus under 28 U.S.C. § 2254.

### I. Procedural History

Hall is currently incarcerated at Northeast Correctional Center in Bowling Green, Missouri, pursuant to the sentences and judgments of the Circuit Court of the City of St. Louis, Missouri. (Doc. 12-1 at 23-27.)

The State charged Hall as a prior and persistent offender with unlawful possession of a firearm, unlawful use of a weapon, resisting arrest, and third-degree assault of a law enforcement officer. *Id.* at 14-15. On April 7, 2011, Hall pleaded guilty to all charges.[1] *Id.* at 21. In exchange for Hall's guilty plea, the State recommended concurrent sentences of 11 years imprisonment for the unlawful possession of a firearm charge, seven years for the unlawful use of a weapon charge, seven years for the resisting arrest charge, and one year[2] for the

---

[1]Hall also pleaded guilty to two counts of possession of a controlled substance in a separate case, which Hall does not challenge in this current action.
[2]Because Hall has now completed the one-year sentence for the misdemeanor assault charge, he cannot challenge this conviction in the instant action. *See Maleng v. Cook*, 490 U.S. 488, 490-91 (1989).

1

misdemeanor assault charge. *Id.* at 20. Additionally, Hall acknowledged that he had a Federal gun charge pending, for which he could be sentenced to 20 years. *Id.* Hall testified that it was his understanding that the United States would dismiss that charge if he pleaded guilty to the State charges. *Id.* The court sentenced Hall in accordance with his plea agreement to a total term of imprisonment of 11 years. *Id.* at 21.

On August 3, 2011, Hall filed a *pro se* Motion to Vacate, Set Aside or Correct the Judgment or Sentence pursuant to Missouri Supreme Court Rule 24.035. *Id.* at 31-36. After appointment of counsel, Hall filed an Amended Motion and request for evidentiary hearing. Hall argued that he received ineffective assistance of counsel in that trial counsel incorrectly advised him that he would only be required to serve 40% of his sentences. *Id.* at 41-48. He argued that, but for this advice, he would not have pleaded guilty. *Id.*

Prior to the evidentiary hearing on his post-conviction motion, Hall filed a Motion for Change of Judge for cause. *Id.* at 49. Hall alleged that the assigned judge, the Honorable Margaret M. Neill, had prejudged the merits of Hall's case before hearing evidence. *Id.* at 49-52. Specifically, Hall alleged that Judge Neill made remarks during an in-chambers scheduling conference indicating that her intent was to deny Hall's post-conviction relief motion after the evidentiary hearing because Hall had a "snowball's chance in hell" at success. *Id.* Hall's Motion for Change of Judge was denied. *Id.* at 53-55. The court found that Judge Neill's comments were based on the record in the underlying case and the plausibility of Hall's claim, which were not grounds for a change of judge. *Id.* at 55.

On May 13, 2013, the motion court denied Hall's motion after holding an evidentiary hearing. *Id.* at 65-73.

In his single point on appeal, Hall argued that the motion court erred in overruling his Motion for Change of Judge for cause because Judge Neill's comments indicated that she had pre-judged Hall's case and relied on extrajudicial information. (Doc. 12-3.) On April 8, 2014, the Missouri Court of Appeals affirmed the decision of the motion court. (Doc. 12-5.)

Hall timely filed the instant Petition on February 2, 2015. (Doc. 1). Hall raises the following grounds for relief: (1) he received ineffective assistance of counsel because plea counsel told him he would only have to serve 40% of his sentence when he was in fact required to serve 80%, which rendered his guilty plea unknowing and involuntary; and (2) the motion court erred in overruling his Motion for Change of Judge because the judge's comments indicated that that the court had pre-judged the issues and relied in part on extrajudicial information.

On July 9, 2015, Respondent filed a Response to the Order to Show Cause, in which he argues that Hall's first ground for relief is procedurally defaulted and fails on the merits; and Hall's second ground for relief is not cognizable in federal habeas proceedings. (Doc. 12.)

Hall has filed a Traverse, in which he presents further argument in support of his grounds for relief. (Doc. 19).

## II. Facts

At the evidentiary hearing held in connection with Hall's post-conviction motion, Hall and his mother, Celeste Hall, testified on behalf of Hall. Plea counsel, Kristi Ridings and Jeremy Farishon; and Hall's Federal Public Defender, Nanci McCarthy, testified on behalf of the State. (Doc. 12-2.)

Hall testified that, two days prior to his guilty plea hearing, another inmate told him that he would have to serve 80% of his State sentence. *Id.* at 9-10. Hall stated that when he asked

Ms. Ridings about this, she responded that it was incorrect, and that he would only have to serve 42% of his sentence. *Id.* at 10. He testified that he asked Ms. Ridings if she could put this information in writing. *Id.* Hall testified that Mr. Farishon appeared with him at his guilty plea hearing. *Id.* at 12. He indicated that Mr. Farishon handed Hall a "piece of paper that had unlawful use of a weapon with 42 percent circled on it," which he showed to his mother. *Id.* Hall testified that this piece of paper was "the very reason why I took—I plead guilty to the 11 years." *Id.*

Ms. Hall testified that she was present at Hall's plea hearing, and that Hall told her in court that he would have to serve four years and four months. *Id.* at 20. Ms. Hall testified that she was not present during the conversation Hall had with plea counsel. *Id.* at 21.

Ms. Ridings testified as follows regarding Hall's allegations concerning his parole eligibility:

> A. I don't recall any conversations about that. I know in Federal prison that's a definite no parole. With regards to the State's charge and parole, what I'm sure I told him is what I tell every client, and that is, The parole Board establishes their own rules, there's nothing that I, Judge Neill, nor the prosecuting attorney's office can do to negotiate percentages; that would be determined when you get there by a face sheet.
>
> Q. And what is that face sheet you're talking about?
>
> A. A face sheet? When they're delivered to the Missouri Department of Corrections they're given a face sheet that gives estimated release dates, and dates of that nature. And, unfortunately, Defense attorneys have no control over how they set those dates and what they do.
>
> Q. Did you make any documentation or give Jeremy Farishon any documentation regarding percentages for Mr. Hall if he pled guilty to his State charges?
>
> A. No, I don't know that—I heard Mr. Hall's testimony; I don't know what that would have been.

*Id.* at 29. Ms. Ridings further testified that she did not consult a parole analyst to determine the

percentage of the sentence Hall would serve based on his record because "it was never an issue. The issue was: Was he going to take the Federal time or the State time?" *Id.* at 35. She stated that she believed Hall was facing a minimum sentence of 15 years on the Federal charge because he was an Armed Career Offender. *Id.*

Mr. Farishon testified as follows when asked whether he discussed with Hall his parole eligibility:

    A. I don't recall.

    Q. In your practice, have you ever spoken with clients about the percentage they would serve on any given charge?

    A. I give an estimation; but I always say, It's up to the parole board and they can do anything they want to do.

    Q. Did you tell the Defendant, Mark Hall, that he was going to serve somewhere between 40 and 42 percent on these charges?

    A. I would never give a solid number, no, unless it was an 85-percent statutory crime.

    Q. Did you give Mark Hall—what did you call it—a solid number?

    \*\*
    A. I don't recall.

    Q. Did you give him a piece of paper with 42 percent circled on it at any time—

    A. I don't recall.

    Q. –in your dealings with him?

    A. Sorry. I don't recall doing that.

    Q. You say you don't recall doing that, does that mean you could have done it and you don't remember, or you did not do that?

    A. I could have done it and I don't remember.

    Q. Okay. In your practice is that something you normally would have done, give a piece of paper with a solid number circled on it?

> A. It wouldn't be a solid number. It would be an estimated percentage.
>
> \*\*\*
>
> Q. Okay. Did you yourself figure out what his—what you believed his percentage of time would be that he would serve?
>
> A. No.
>
> Q. Okay. So if you did not yourself come in that day, plead him, figure out the percentage of time he would serve, would you have written down any number on a piece of paper and given it to him with regards to the sentencing?
>
> A. I would not have written down a number, no.

*Id.* at 38-40.

Ms. McCarthy testified that she represented Hall in 2010 and 2011 on a Federal charge of felon in possession of a firearm stemming from the same incident as the State charges. *Id.* at 42-43. Ms. McCarthy testified that she had been in regular contact with Ms. Ridings because the U.S. Attorney indicated that he would dismiss the Federal charge if Hall received a sentence of greater than 10 years in State court. *Id.* at 44. She testified that she advised Hall that he would be required to serve 85% of his Federal sentence pursuant to statute. *Id.* at 45. Ms. McCarthy stated that she did not discuss with Hall the percentage of the State sentence he would be required to serve. *Id.* Ms. McCarthy stated that the U.S. Attorney's office dismissed the Federal charge after Hill was sentenced to 11 years on the State charges. *Id.* at 44.

### III. Standard of Review

A federal court's power to grant a writ of habeas corpus is governed by 28 U.S.C. § 2254(d), which provides:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The Supreme Court construed Section 2254(d) in *Williams v. Taylor*, 529 U.S. 362 (2000). With respect to the "contrary to" language, a majority of the Court held that a state court decision is contrary to clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law" or if the state court "decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Id.* at 405. Under the "unreasonable application" prong of § 2254(d)(1), a writ may issue if "the state court identifies the correct governing legal rule from [the Supreme Court's] cases but unreasonably applies [the principle] to the facts of the particular state prisoner's case." *Id.* Thus, "a federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 410. Although the Court failed to specifically define "objectively unreasonable," it observed that "an unreasonable application of federal law is different from an incorrect application of federal law." *Id.* at 410.

### IV. Procedural Default

Respondent argues that Hall's first ground for relief is procedurally defaulted because Hall did not raise this claim in his post-conviction appeal.

To avoid defaulting on a claim, a petitioner seeking federal habeas review must have fairly presented the substance of the claim to the state courts, thereby affording the state courts a

7

fair opportunity to apply controlling legal principles to the facts bearing on the claim. *Wemark v. Iowa,* 332 F.3d 1018, 1020-21 (8th Cir. 2003) (internal quotation marks and citations omitted) Specifically, a state prisoner must fairly present each of his claims in each appropriate state court before seeking federal habeas corpus review of the claim. *Baldwin v. Reese,* 541 U.S. 27, 29 (2004). A claim has been fairly presented when a petitioner has properly raised the same factual grounds and legal theories in the state courts that he is attempting to raise in his federal petition. *Wemark,* 322 F.3d at 1021 (internal quotation marks omitted). Claims that are not fairly presented to the state courts are procedurally defaulted. *See id.* at 1022.

Here, Hall raised the claim contained in Ground One in his post-conviction motion but did not include it in his appeal from the denial of post-conviction relief. The failure to prosecute this claim in his post-conviction appeal has resulted in the procedural default of Ground One. *See Lowe-Bey v. Groose*, 28 F.3d 816, 818 (8th Cir. 1994); *Jolly v. Gammon*, 28 F.3d 51, 53 (8th Cir. 1994); *Sweet v. Delo*, 125 F.3d 144, 149 (8th Cir. 1996); *Osborne v. Purkett*, 411 F.3d 911, 919 (8th Cir. 2005); *see also Arnold v. Dormire,* 675 F.3d 1082, 1087 (8th Cir. 2012) (failure to raise claim in appeal from denial of post-conviction motion is a bar that cannot be overcome by cause and prejudice).

Claims that have not been fairly presented to the state courts are procedurally defaulted and may not give rise to federal habeas relief unless the petitioner establishes "cause for not presenting the claim on post-conviction appeal and prejudice from the failure, or a fundamental miscarriage of justice-meaning that he is actually innocent." *Storey v. Roper,* 603 F.3d 507, 523-24 (8th Cir. 2010) (citing *Schlup v. Delo,* 513 U.S. 298, 324 (1995)).

Hall appears to argue that his appellate counsel was ineffective in failing to raise Ground One in his post-conviction appeal. Ineffective assistance of post-conviction counsel does not

constitute cause to excuse a procedural default. *Arnold v. Dormire*, 675 F.3d 1082, 1087 (8th Cir. 2012). Hall has, therefore, failed to demonstrate cause to excuse his procedural default of Ground One. Additionally, Hall does not present evidence of actual innocence.

Thus, Hall's claim asserted in Ground One is procedurally defaulted.

## V. Hall's Claims

Hall asserts two grounds for relief. The undersigned will discuss Hall's grounds for relief in turn.

**1.     Ground One**

In his first ground for relief, Hall argues that he received ineffective assistance of counsel because plea counsel incorrectly advised him that he would only be required to serve 40% of his sentence rather than 80%, which rendered his guilty plea unknowing and involuntary. Hall contends that he would not have accepted the State's offer but for the incorrect advice. The Court has already found this claim to be procedurally defaulted. As will be briefly discussed below, it fails on its merits as well.

After a guilty plea, collateral review of the plea "is ordinarily confined to whether the guilty plea was both counseled and voluntary." *Pennington v. United States*, 374 F. Supp.2d 813, 816 (E.D. Mo. 2005) (citing *United States v. Broce*, 488 U.S. 563, 569 (1989)). A plea is voluntary if it "represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *Hill v. Lockhart*, 474 U.S. 52, 56 (1985) (quoting *North Carolina v. Alford*, 400 U.S. 25, 31 (1970)). In the context of a guilty plea, a defendant who pleaded guilty upon the advice of counsel may challenge the voluntariness of that plea through a claim of ineffective assistance of counsel. *Hill*, 474 U.S. at 56-57. The Supreme Court has held that the two-prong test articulated in *Strickland v. Washington*, 466 U.S. 668, 689 (1984), applies to

9

ineffective assistance claims in the guilty plea context. *Hill*, 474 U.S. at 57-59. To satisfy the first prong, sometimes known as the "deficient performance" prong, the petitioner must show "that counsel's representation fell below an objective standard of reasonableness." *Id.* at 57. "Judicial scrutiny of counsel's performance must be highly deferential," and the petitioner bears a heavy burden in overcoming "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance" and might be considered sound trial strategy. *Strickland*, 466 U.S. at 689 (citation and internal quotation marks omitted). To satisfy the second prong in the guilty plea context, the petitioner must show "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59.

When an ineffective assistance claim has been addressed by the state court, this Court must bear in mind that "[t]aken together, AEDPA and *Strickland* establish a 'doubly deferential standard' of review." *Williams v. Roper*, 695 F.3d 825, 831 (8th Cir. 2012) (quoting *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011)). In the context of a habeas claim, it is not sufficient for a petitioner to "show that he would have satisfied *Strickland*'s test if his claim were being analyzed in the first instance." *Bell*, 535 U.S. at 698-99. "Rather, he must show that the [state court] applied *Strickland* to the facts of his case in an objectively unreasonable manner." *Id.* at 699.

Here, the motion court rejected Hall's claim, finding that Hall did not present sufficient evidence to show that his counsel misinformed him regarding his parole eligibility, and that his claim was not reasonable based on his past criminal record. (Doc. 12-1 at 72-73.) The court held as follows, in relevant part:

> In the instant case the Court finds that Movant has not shown by a preponderance of the evidence that his counsel told him that he would only have

10

> to serve 40% of his sentence. Further, the Court notes that Movant benefitted from the plea in that the federal charges against him, which carried a minimum of fifteen years of which 85% would have to be served, were not brought. The Court does not believe that Movant's alleged belief was reasonable or that such alleged belief had a reasonable basis in the record. Additionally, Movant had a significant past criminal record. Movant has not shown by credible evidence that counsel made an affirmative misrepresentation to him or that he would have insisted on going to trial. This allegation is accordingly without merit and denied.

*Id.*

The motion court reasonably applied *Strickland*. Both plea counsel testified at the evidentiary hearing that they did not recall making any representations to Hall that he would serve only 40 or 42% of his sentence, and that it was not their general practice to make such representations regarding parole eligibility. The motion court determined after hearing testimony from Hall and counsel that Hall had not shown that counsel misinformed him regarding his parole eligibility. A state court's factual findings are presumed correct. 28 U.S.C. § 2254(e)(1); *Whitehead v. Dormire*, 340 F.3d 532, 536 (8th Cir. 2003). Hall has not produced any evidence to rebut this presumption.

The motion court's determination that Hall had shown no credible evidence that he would have gone to trial absent counsel's alleged misrepresentation was also reasonable. Plea counsel testified that she believed Hall would have been required to serve at least 15 years with no option for parole on his pending Federal charge. Hall's Federal Public Defender testified that Hall would be required to serve 85% of his Federal sentence pursuant to statute. She further testified that the United States had agreed to dismiss the Federal charge against Hall if he received a sentence of greater than 10 years in State court. Given Hall's choice of pleading guilty to 11 years on the State charges, or going to trial on those charges and facing the Federal charge carrying a longer sentence, it is not reasonable that he would have instead insisted on going to trial.

11

The State court decision was not contrary to or an unreasonable application of clearly established law, nor was it an unreasonable application of the facts. Accordingly, Ground One will be denied.

**2.      Ground Two**

In his second ground for relief, Hall argues that the motion court erred in overruling his Motion for Change of Judge.

Hall's claim is not cognizable in federal habeas corpus review. Federal habeas courts are only authorized to review the constitutionality of a state criminal conviction, not infirmities in a state post-conviction relief proceeding. "Because there is no federal constitutional requirement that states provide a means of post-conviction review of state convictions, an infirmity in a state post-conviction proceeding does not raise a constitutional issue cognizable in a federal habeas petition." *Williams-Bey v. Trickey,* 894 F.2d 314, 317 (8th Cir. 1990). *See Prince v. Bowersox*, No. 14-0134-CV-W-HFS-P, 2014 WL 4954084, at *16 (W.D. Mo. Oct. 2, 2014) (claim that post-conviction motion court erred in denying motion for change of judge was not cognizable in federal habeas corpus review); *Rulo v. Prudden*, No. 4:10-CV-416 (CEJ), 2013 WL 363219, at *3 (E.D. Mo. Jan. 30, 2013) (petitioner's argument that he was entitled to a change of judge "is a state law claim and may not be reviewed by a federal habeas court").

Accordingly, Hall's second ground for relief will be denied.

## VI.     **Certificate of Appealability**

To grant a certificate of appealability, a federal habeas court must find a substantial showing of the denial of a federal constitutional right. *See* 28 U.S.C. § 2253(c)(2); *Hunter v. Bowersox*, 172 F.3d 1016, 1020 (8th Cir. 1999). A substantial showing is established if the issues are debatable among reasonable jurists, a court could resolve the issues differently, or the

issues deserve further proceedings. *See Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997). In this case, Hall has failed to make a substantial showing of the denial of a constitutional right. The undersigned is not persuaded that the issues raised in his Petition are debatable among reasonable jurists, that a court could resolve the issues differently, or that the issues deserve further proceedings.

Accordingly, no Certificate of Appealability shall be issued.

## ORDER

**IT IS HEREBY ORDERED, ADJUDGED and DECREED** that the instant Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254 be **denied** and be **dismissed with prejudice** by separate judgment entered this date.

**IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that Petitioner be denied a Certificate of Appealability if Petitioner seeks to appeal this Judgment of Dismissal.

Dated this 16th day of November, 2017.

_/s/ Abbie Crites-Leoni_
ABBIE CRITES-LEONI
UNITED STATES MAGISTRATE JUDGE